IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| **KEAIRA BLOOM,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Case No.: GLS-22-1622 |
| **NOT YOUR AVERAGE JOES,** | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

Plaintiff Keaira Bloom ("Plaintiff") has filed a Complaint against the Defendant asserting two causes of action: Count I, hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII"); and Count II: retaliation, in violation of Title VII. (ECF No. 1). Specifically, with respect to Count I, Plaintiff alleges that her supervisor, Terrance Faison, created a hostile work environment by frequently calling her derogatory slurs based on her sexual orientation and threatening to physically harm her. With respect to Count II, Plaintiff alleges that she was terminated for reporting Mr. Faison's discriminatory conduct to Defendant.

Pending before the Court[1] is "Defendant's Motion for Summary Judgment" and statement of points and authorities in support thereto (ECF Nos. 40, 40-1) (collectively "the Motion"), filed by Defendant Not Your Average Joes ("Defendant"). Plaintiff filed her opposition related thereto ("Opposition"), and the Defendant filed its Reply. (ECF Nos. 42, 45). Plaintiff filed a motion for leave to file a surreply and a proposed surreply, (ECF Nos. 47, 47-1) (collectively "the

---

[1] The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (ECF No. 19).

Surreply"),which Defendant did not oppose. The matter is fully briefed; accordingly no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons set forth below, the Motion is **DENIED,** and the surreply motion is **DENIED as moot**.

I. **FACTUAL BACKGROUND**[2]

   1. *Undisputed Facts* [3]

In or around April or May of 2021, Plaintiff, a LGBTQ woman, was hired as a server at Not Your Average Joes' Gaithersburg restaurant ("the Restaurant"). (Deposition of Plaintiff, "Plaintiff Dep.," 29:15-19, J.A. 00012; Plaintiff Dep., 39:3-11, J.A. 00014). During her training, Plaintiff received and signed "The Book of Joe," a handbook outlining the Restaurant's policies and procedures. (Plaintiff Dep., 37:7-20, J.A. 00014). Per the company policy, employees would receive one free meal per shift. (Deposition of Terrance Faison, "Faison Dep.," 35:12-14, JA 00082).

During the relevant time period, Terrance Faison was Plaintiff's supervisor. (Plaintiff Dep., 40:14-15, J.A. 00014). At the start of her employment, Plaintiff' did not have issues with Mr. Faison. However, in August 2021, the relationship between Plaintiff and Mr. Faison changed. (Plaintiff Dep., 42:1-14, J.A. 00015).

In June and July 2021, Mr. Faison called Plaintiff "culera" and "mongolita" at least three or four times. (Plaintiff Dep., 44:1-19, J.A. 00015). At the time, Plaintiff did not know the meaning of the words. (Plaintiff Dep., 46:7-9, J.A. 0016).

---

[2] The parties submitted a Joint Appendix. (ECF No. 49) ("J.A."). Defendant's submissions can be found in this range: Bates Nos. 0001-00188. Plaintiff's submissions can be found in this range: Bates Nos. 00189-00210. The Court will refer to the documents as, e.g., J.A. 0001.

[3] The Court views all evidence in the light most favorable to the Plaintiff, the nonmoving party. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

2

In August 2021, Plaintiff complained to her manager, Janette Mercado, and supervising chef, Bryan Yealy, that Mr. Faison had been calling her a "culera," and that she recently learned that it meant "fagg**" in Spanish. (Plaintiff Dep., 51:17-52:14, J.A. 00017). Although Plaintiff did not file a formal complaint to Human Resources, Plaintiff complained again to Ms. Mercado and Mr. Yealy that same month. (*Id.*; Plaintiff Dep., 59:14-19, J.A. 00019). Specifically, in August 2021, Plaintiff complained that Mr. Faison told her that he would "smack the sh** out of [her]". (Faison Dep., 29:15-30:3, J.A. 00080-81; Deposition of Bryan Yealy, "Yealy Dep.," 15:16-21, JA 00098). Plaintiff also expressed that she was uncomfortable working with Mr. Faison and requested to change shifts to avoid additional interactions with him. (Plaintiff Dep., 49:1-9, J.A. 00017). However, Mr. Yealy did not accommodate Plaintiff's request to work different shifts. (*Id.*).

Upon investigating Plaintiff's complaints, Ms. Mercado held a meeting with Mr. Faison and Plaintiff, where she explained that Mr. Faison's behavior was inappropriate. (Plaintiff Dep., 111:14-19, J.A. 00032; Faison Dep., 30:21-31:13, JA 00081). At the meeting, Mr. Faison apologized to Plaintiff. (*Id.*).

On October 12, 2021 Mr. Faison refused to help Plaintiff serve a large party when she asked for assistance. (Plaintiff Dep., 73:1-19, J.A. 00023). An argument ensued, during which time Mr. Faison told Plaintiff to "get the f**k out of my face" and threatened to "slap the sh** out of [her]." (Faison Dep., 48:8-11, JA 00085; Plaintiff Dep., 73:12-13, J.A. 00023). In response to Mr. Faison's comments, Plaintiff requested to be sent home and ordered her free meal on her way out of the door.[4] (Plaintiff Dep., 73:14-19, J.A. 00023). Mr. Faison then went to the kitchen and instructed the chef to not give Plaintiff her free meal. (Faison Dep., 36:19-38:5, J.A. 00082-83).

---

[4] Employees are entitled to one free meal per shift. (Faison Dep., 35:12-14, J.A. 00082).

3

Next, Plaintiff blocked Mr. Faison's path out of the kitchen as she asked why he would not allow her to receive her free meal. (Plaintiff Dep., 73:14-19, J.A. 00023). Mr. Faison then pushed Plaintiff out of his way, causing Plaintiff to contact him as she stumbled backwards. (Plaintiff Dep., 85:2-89:5, J.A. 00026-27; Faison Dep., 38:6-39:3, J.A. 00083). As the two continued to argue, Mr. Faison threatened to have his sisters come to the Restaurant to "beat [Plaintiff] up." (Plaintiff Dep., 74:1-10, J.A. 00023; Faison Dep., 40:3-16, J.A. 00083).

Immediately after the incident, Plaintiff called general manager Al Nappo and told him what happened. (Plaintiff Dep., 90:12-16, J.A. 00027). Then, Plaintiff explained to manager Henry Yi how the incident escalated and Mr. Faison cursed at her, and asked whether she would still be able to work at the Restaurant. (Plaintiff Dep., 91:19-92:6, J.A. 00027). Mr. Faison immediately texted Mr. Yealy and Mr. Nappo and "made them aware of the situation that had went down." (Faison Dep.39:4-6, J.A. 00083).

Dishwasher Sofirifa Papanye witnessed the incident in the kitchen and provided a statement during Defendant's investigation that Plaintiff attempted to punch Mr. Faison when the incident in the kitchen escalated. (Plaintiff Dep., 83:13-17, J.A. 00025; Affidavit of Sofirifa Papanye, "Papanye Affidavit," ¶¶ 5-17, JA 00141-42). Specifically, Ms. Papanye stated that Mr. Faison calmly asked Plaintiff to move when she blocked his way and yelled profanities at Mr. Faison. (Papanye Affidavit, ¶¶ 8-12, JA 00142). Mr. Papanye further stated that he saw Plaintiff punched Mr. Faison in the side, although she was aiming for Mr. Faison's face, and that he was impressed how calm Mr. Faison was. (Papanye Affidavit, ¶¶ 13-16, JA 00142).

On the morning of October 13, 2021, Defendant concluded its investigation of the incident. (Plaintiff Dep., 103:18-104:8, J.A. 00030). That afternoon, Plaintiff filed a police report that Mr. Faison threatened her before she arrived at the Restaurant to discuss the incident with Mr. Nappo.

(Plaintiff Dep., 74:12-19, J.A. 00023). At the meeting, Mr. Nappo told Plaintiff that she was being terminated because the investigation revealed that she blocked Mr. Faison's path and did not allow him to pass, in violation of company policy. (Plaintiff Dep., 103:18-104:8, J.A. 00030; Papanye Affidavit, ¶17, JA 00142; Plaintiff's Performance Critique Form, JA 00185). Mr. Faison was "written up" for arguing with Plaintiff by Mr. Nappo. (Faison Dep., 46:5-10, J.A. 00085). As relevant here, the Book of Joe contains a non-exhaustive list of inappropriate conduct that could result in disciplinary action, up to and including termination. (Book of Joe, J.A. 00168-69). For example, "rudeness to a guest or staff member," and "fighting," and "use or threat of the use of violence" are listed as unprofessional conduct that could result in disciplinary action. (*Id.*).

    2. *Disputed Facts*

According to Plaintiff, the following are facts. First, Ms. Mercado informed Plaintiff that "culera" and "mongolita" were Spanish slurs that translated to "fagg**" and "son of a retard" or "son of a fagg**," respectively. (Plaintiff Dep., 45:6-15, J.A. 00016; Affidavit of Plaintiff, "Plaintiff Affidavit," ¶¶ 2-3, JA 00190). Second, at both meetings that occurred in August 2021, Plaintiff complained to Mr. Yealy and Ms. Mercado that she believed Mr. Faison treated her differently and called her derogatory names because of her sexual orientation. (Plaintiff Dep., 49:16-50:6, J.A. 00017). Third, between August 2021 and October 2021, things did not improve between Plaintiff and Mr. Fashion because he: (a) would tell Plaintiff that she should use the men's restroom (Plaintiff Dep., 59:20-60:8, J.A. 00019); (b) entered "culera" in place of Plaintiff's name on the food order screen (Plaintiff Affidavit," ¶ 2, JA 00190); and (c) denied Plaintiff's free meals, despite allowing other employees to receive their free meals (Plaintiff Dep., 51:3-11, J.A. 00017). Fourth, Plaintiff, did not punch Mr. Faison after he shoved her. (Plaintiff Dep., 74:1-19, J.A. 00023).

5

In contrast, Defendant offers the following facts. First, that Plaintiff did not explain to Mr. Yealy and Ms. Mercado that the term "culera" was a homophobic slur. (Plaintiff Dep., 61:17-62:2, J.A. 00020). Second, Plaintiff did not complain to Mr. Yealy that Mr. Faison discriminated against her based on her sexual orientation, and Ms. Mercado did not report Plaintiff's complaints to Mr. Yealy. (Yealy Dep., 18:5-19:5, J.A. 00099). Third, when Plaintiff was asked during her deposition who Mr. Faison treated better than he treated her, Plaintiff could not identify anyone. (Plaintiff Dep., 44:1-13, J.A. 00015). Fourth, after Mr. Faison apologized for calling Plaintiff "culera" and threatening to slap her, his relationship with Plaintiff improved for two months. (Plaintiff Dep., 44:1-13, J.A. 00015). Fifth, its investigation revealed that Plaintiff punched Mr. Faison on October 12, 2021. (Papanye Affidavit, ¶13, JA 00142). Sixth, Defendant terminated Plaintiff because she violated company policy; namely because she blocked the path of Mr. Faison and would not allow him to exit the kitchen. (Plaintiff's Performance Critique Form, JA 00185).

## II. THE LAW

### A. Motions for Summary Judgment

A motion for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of, e.g., pleadings, depositions,

answers to interrogatories, admissions, and affidavits. *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).

To defeat a motion for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("trial is unnecessary only if either the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question"). A "mere scintilla" of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C 1966)).

A reviewing court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### B. Surreply

In general, a court will not permit a party to file a surreply unless the party otherwise would not have an opportunity to contest an issue that the non-moving party had failed to present before filing a reply. *See* Local Rule 105.2 (D. Md. 2023); *Clear Channel Outdoor, Inc. v. Mayor & City Council of Balt.*, 22 F. Supp. 3d 519, 529 (D. Md. 2014); *see also Hodge v. Giant of Maryland, LLC*, Civ. No. PWG-21-554, 2022 WL 4080317, at *3 (D. Md. Sept. 6, 2022) (holding that a surreply is highly disfavored in this District).

### III. DISCUSSION

#### A. Parties' Arguments

Defendant asserts that it is entitled to summary judgment for the following reasons: (1) Mr. Faison's occasional use of the terms "culera" and "mongolita" was not severe or pervasive enough to create a hostile work environment; (2) Defendant had a non-discriminatory reason to terminate Plaintiff, namely because its investigation revealed that she violated company policy by blocking Mr. Faison's path and not allowing him to exit the kitchen; and (3) Plaintiff cannot demonstrate that the reason for her termination was pretextual. (Motion, pp. 8-16). In the Opposition, Plaintiff argues that: (1) Mr. Faison's discriminatory conduct was severe and pervasive; and (2) Defendant's reason for terminating Plaintiff is pretextual, as her termination was punishment for complaining to Mr. Yealy and Ms. Mercado about Mr. Faison. (Opposition, pp. 10-15).

In its Reply, Defendant argues that Plaintiff cannot establish *prima facie* claims of hostile work environment and retaliation based on her sexual orientation because the words "culera" and "mongolita" mean "ass****" in Spanish. (Reply, pp. 2-15). In the surreply, Plaintiff contends that the Defendant raised new arguments in its Reply by challenging the meaning of the terms "culera" and "mongolita," and therefore requests to address such arguments by filing a surreply. (Surreply, pp. 1-2).

The Court will address each argument in turn.

#### B. Hostile Work Environment (Count I)

Title VII protects employees from an employer's discrimination when such discrimination is based on an employee's sexual orientation. *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 252 (D. Md. 2023) (citing *Bostock v. Clayton County*, 590 U.S. 644, 140 S. Ct. 1731, 207 L.Ed.2d 218 (2020)).

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 599 (D. Md. 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc)).

To demonstrate a hostile work environment claim, a plaintiff must show "that the conduct of the employer: (1) was unwelcome; (2) resulted because of her gender, race, disability, or prior protected status; (3) was sufficiently severe or pervasive to alter the conditions of her employment; and (4) was imputable to her employer." *Prosa v. Austin*, Civ. No. ELH-20-3015, 2022 WL 394465, at *35 (D. Md. Feb. 8, 2022) (internal quotation marks and citation omitted) (cleaned up); *see also Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).

As to the third element, a hostile work environment exists when the "workplace is permeated with discriminatory intimidation, ridicule, and insult." *Prosa*, 2022 WL 394465, at *36 (quoting *Boyer-Liberto*, 786 F.3d at 281 (cleaned up).

The severe or pervasive element has both a subjective and objective component. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (citing *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)); *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) ("the plaintiff must show that the work environment was not only subjectively hostile, but also objectively so"). This objective inquiry "is not, and by its nature cannot be, a mathematically precise test." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367 (1993)). To be sure, viable hostile work environment claims often involve repeated conduct. *Boyer-Liberto*, 786 F.3d at 277 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17, 122 S.Ct. 2061, 153 (2002)). That is because, "in direct contrast

9

to discrete acts, a single act of harassment may not be actionable on its own." *Id.* (citation omitted). Importantly, however, an "isolated incident[ ]" of harassment can "amount to discriminatory changes in the terms and conditions of employment," if that incident is "extremely serious. *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)) (alterations in original).

The Fourth Circuit has held that "[w]hen determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 421 (4th Cir. 2014) (quoting *Cent. Wholesalers, Inc.*, 573 F.3d at 176) (internal quotation marks omitted)). The status of the harasser is also a "significant factor" to be considered; harassment by a supervisor tends to be more serious, while harassment by a co-equal is less serious. *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 408 (4th Cir. 2022) (citation omitted). However, "no single factor is dispositive, as the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Sunbelt Rentals, Inc.*, 521 F.3d at 315) (internal quotation marks omitted)). Common sense, and an appropriate sensitivity to social context, will enable courts and juries" to identify objectively hostile or abusive conduct. *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 696 (4th Cir. 2007) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998))

Defendant avers that Mr. Faison's conduct did not rise to the level of severe or pervasive because he only called Plaintiff a "culera" on three or four occasions and the situation between

Plaintiff and Mr. Faison improved for two months until the next incident. (Motion, pp. 7-10). Defendant argues that Plaintiff cannot demonstrate severe or pervasive conduct with "several one-off instances of disrespect." (Reply, pp. 6-9). Plaintiff counters that Mr. Faison's conduct was severe and pervasive because he: (1) entered "culera" in place of her name on the food order screen; (2) continued to call Plaintiff a "culera" and "mongolita" after she complained to Defendant's managers on two occasions; (3) would tell Plaintiff that she should use the men's bathroom; (4) threatened to "slap the sh** out of her;" and (5) refused to authorize Plaintiff's employee meals, despite allowing other employees to receive their free meals. (Opposition, pp. 10-12).

As a preliminary matter, even though Mr. Faison and Plaintiff both testified that they understood "culera" to be a Spanish slur for "fagg**," Defendant argues for the first time in its Reply that "culera" means "ass****." As a legal matter, the Court declines to consider this argument as it is improperly raised. *See*, *e.g.*, *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered"). In addition, as set forth herein, Defendant's arguments do not change the outcome of the Court's analysis because the Court declines to consider Defendant's new argument for being raised too late. Thus, the Court will deny the Surreply as moot.

Next, construing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Mr. Faison did not merely utter the word "culera." Indeed, Plaintiff and Mr. Faison both testified that he called her a "culera" on three to four occasions from June to August 2021. Thus, a reasonable jury considering the social context of calling a LGTBQ woman a "culera" could find Mr. Faison's conduct to be extremely serious and humiliating. *See Membreno v. Atlanta Rest. Partners, LLC*, 517 F. Supp. 3d 425, 442 (D. Md. 2021) ("'[D]egrading and humiliating conduct"

11

can establish severe of pervasive discrimination") (quoting *Jennings,* 482 F.3d at 699) (alterations in original); *Boyer-Liberto*, 786 F.3d at 277 ("an isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious") (internal quotation marks and citation omitted) (cleaned up).

In addition, Plaintiff has produced sufficient evidence for which a reasonable jury could find that the harassing conduct was threatening. In August 2021 (the same month that Plaintiff complained that Mr. Faison called her "culera"), Plaintiff complained that Mr. Faison threatened to "slap the sh\*\*" out of her and requested to not work with him. Mr. Faison continued to make this threat to Plaintiff, despite Plaintiff having not just one meeting, but two meetings with meetings with a Restaurant supervisors in August 2021. Thus, not only is Mr. Faison's status as Plaintiff's supervisor a significant factor, but his words themselves were physically threatening. *See Boyer-Liberto*, 786 F.3d at 278 ("Simply put, a supervisor's power and authority invests his or her harassing conduct with a particular threatening character"). (internal quotation marks and citation omitted).

Finally, Defendant seems to suggest that because Plaintiff did not report another incident until October 2021 that Mr. Faison's conduct could not unreasonably interfere with her employment. But the evidence before the Court suggests otherwise. Construing the facts in a light most favorable to Plaintiff, for instance, Plaintiff testified that "things got better" but only "for a little bit, maybe for like a couple of weeks" after Mr. Faison apologized for calling her "culera" and threatening to slap her. And notably, Plaintiff testified that she could not complete her shift and asked to be sent home early after Mr. Faison told her "to shut the f\*\*k up, I will slap you in the face." Thus, a reasonable jury could find that Mr. Faison's conduct unreasonably interfered with Plaintiff's work performance. *See Smith v. First Union Nat. Bank*, 202 F.3d 234, 243 (4th

Cir. 2000) (finding a supervisor's sexually derogatory remarks coupled with threats of physical threats was a question of fact for the jury to decide).

In sum, the Court finds that Plaintiff has produced enough evidence from which a jury could find that Mr. Faison's conduct was unwelcome and was because of her sexual orientation. In addition, a reasonable jury could find that Plaintiff has established that Mr. Faison's conduct was objectively severe, physically threatening, humiliating, frequent, and unreasonably interfered with Plaintiff's work performance. Thus, there is a genuine dispute of fact as to whether Mr. Faison's conduct was severe and pervasive enough as to create a hostile work environment. Accordingly, Defendant's motion for summary judgment on Count I is denied.

### C. Retaliation (Count II)

Title VII prohibits an employer from both: (i) discriminating against an employee on the basis of sex; and (ii) retaliating against an employee for complaining about prior discrimination or retaliation. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citing 42 U.S.C. §§ 2000e–2(a)(1), 2000e–3(a)). A plaintiff may prove a Title VII retaliation claim "either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Id*.; *see also Prosa*, 2022 WL 394465, at *33 ("A plaintiff may establish the existence of facts that suggest that the adverse action occurred because of the protected activity. Or, a plaintiff may demonstrate that the adverse act bears sufficient temporal proximity to the protected activity") (internal quotation marks and citations omitted) (cleaned up). And, "[t]he existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action." *Prosa*, 2022 WL 394465, at *33 (quoting *Roberts*, 998 F.3d at 123). Temporal proximity between an employer's knowledge of an

employee's protected activity and an adverse action against that employee must be "very close" to show a retaliatory motive. *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013).

To establish a prima facie case of retaliation under the burden-shifting framework, a plaintiff must show that: (1) she "engaged in protected activity;" (2) the "employer took an adverse action against her;" and (3) "a causal relationship existed between the protected activity and the adverse employment activity." *Lee v. Belvac Prod. Mach., Inc.*, Civ. No. 20-1805, 2022 WL 4996507, at *2 (4th Cir. Oct. 4, 2022) (citation omitted) (cleaned up).

Protected activity under Title VII includes complaints of discrimination based upon "race, color, religion, sex or national origin." *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (citing *Balazs v. Liebenthal,* 32 F.3d 151, 159 (4th Cir. 1994)). In general, an adverse employment action is one that adversely affects the terms, conditions, or benefits of employment. *Prosa*, 2022 WL 394465, at *31 (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021)). To demonstrate a causal connection between the protected activity and the adverse action, a plaintiff must also show that his employer knew that he engaged in protected activity. *Landino*, 520 F. App'x at 198 (citing *Dowe v,* 145 F.3d at 657). "[E]stablishing a 'causal relationship' at the *prima facie* stage is not an onerous burden. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 335 (4th Cir. 2018) (quoting *Foster*, 787 F.3d at 251). A plaintiff need not establish but-for causation until the pretext stage of the burden-shifting framework. *Id.* (citation omitted).

After a *prima facie* case is made, the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason. *Roberts*, 998 F.3d at 122 (citing *Foster*, 787 F.3d at 250). If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination. *Id.*

As stated above, Defendant argues that it is entitled to summary judgment because there is no genuine issue of material fact that it had a legitimate business reason for terminating Plaintiff, namely because Plaintiff blocked Mr. Faison's path and did not allow him to exit the kitchen. Per the Defendant, Mr. Papanye's account of the incident establishes a legitimate basis for her termination for conduct in violation of the company's policy. Plaintiff asserts that she has rebutted the Defendant's evidence and can demonstrate that the allegedly non-discriminatory reason for terminating her was pretextual. Put another way, according to Plaintiff, she has rebutted the employer's evidence because Mr. Faison initiated the first contact when he shoved Plaintiff and a reasonable jury could find that Defendant terminated Plaintiff for reporting Mr. Faison's discriminatory behavior.

As a preliminary matter, Plaintiff's termination occurred approximately two months after reporting Mr. Faison's discriminatory behavior to Mr. Yealy and Ms. Mercado. However, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'" *Clarke*, 962 F. Supp. 2d at 790 (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003)). As stated above, there are two ways Plaintiff can demonstrate causation. Here, Plaintiff argues that she has satisfied her burden of prove for causation as the adverse action occurred because of the protected activity, namely that she was terminated because she complained to Mr. Yealy and Ms. Mercado that Mr. Faison called her names and threatened her based on her sexual orientation. *See Roberts*, 998 F.3d at 123 ("A plaintiff may establish the existence of facts that "suggest[ ] that the adverse action occurred because of the protected activity"). Thus, the Court will begin with its analysis with the burden-shifting test.

   *1. Prima Facie Case of Retaliation*

Defendant asserts that it terminated Plaintiff because her "actions rose to the level of unprofessionalism necessitating a severance of her employment" because she punched Mr. Faison and block his path in violation of its company policy against 'rudeness to … staff member, fighting, use or threat of the use of violence.'" (Motion, pp. 11-12).

Construing the facts in the light most favorable to Plaintiff, in or about August 2021, Plaintiff reported Mr. Faison's discrimination based on her sexual orientation to Defendant's managers Mr. Yealy and Ms. Mercado. Next, on October 13, 2021, Defendant terminated Plaintiff. In addition, a reasonable jury could find that Defendant was aware of Plaintiff's complaint at the time that it terminated her. Thus, the Court finds that Plaintiff has established a *prima facie* case of retaliation. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (finding proof that employer terminated plaintiff after it became aware of complaint "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality"). Accordingly, the burden shifts to Defendant to proffer a non-discriminatory reason for terminating Plaintiff.

Having proffered a non-discriminatory reason for Plaintiff's termination, namely that Plaintiff violated company policy by punching Mr. Faison and blocking his path, the burden shifts back to Plaintiff to prove that Defendant's explanation is pretextual.

   *2. Non-discriminatory Reason is Pretextual*

Construing the evidence in the light most favorable to Plaintiff, the Court finds that there is a genuine dispute of fact as to whether Defendant terminated Plaintiff for violating a company policy, or whether its stated reason was pretextual. For instance, a reasonable jury could find that Defendant's stated reason for terminating her is inconsistent with Plaintiff's Performance Critique

16

Form. Relatedly, that jury could discredit Mr. Papanye's account of "being impressed by how collected and peaceful [Mr. Faison] had acted at the time," finding that it is contradicted by Plaintiff testimony that that Mr. Faison threatened to have his sisters beat up on Plaintiff and/or Mr. Faison's testimony that he called his sisters to beat up on Plaintiff.

Another example comes to mind. For example, on one side of the ledger, Defendant contends that Mr. Papanye's statement that Plaintiff "aimed for [Mr. Faison's] face, but missed and struck him on the side," by itself, is a legitimate basis for its decision to terminate Plaintiff. However, on the other side of the ledger, Plaintiff's Performance Critique Form does not list this conduct as a basis for Plaintiff's termination. *See* Book of Joe, J.A. 00168-69; Plaintiff's Performance Critique Form, JA 00185. Indeed, Defendant listed the reason for Plaintiff's termination as "blocking the path of a fellow team member not allowing him to pass." (Plaintiff's Performance Critique Form, JA 00185).

In addition, Mr. Papanye's sworn affidavit includes the following statements: (1) that he was "impressed by how collected and peaceful [Mr. Faison] had acted at the time"; (2) that Mr. Faison "then stuck his arm out to create a barrier between them. He also kept calmly repeating 'move out of the way.'" (Papanye Affidavit, ¶¶12, 16, JA 00142). However, Plaintiff testified that: (1) Mr. Faison told Plaintiff that he was going to call his sisters to beat her up; (2) she did not punch Mr. Faison. (Plaintiff Dep., 85:2-89:5, J.A. 00026-27; Plaintiff Dep., 74:1-10, J.A. 00023). In addition, Mr. Faison testified that: (1) he threatened to have his sisters beat up Plaintiff; and (2) that he put his arm out and put my arm out and "just kind of like moved [Plaintiff] to the side. Faison Dep., 38:6-39:3, J.A. 00083; Faison Dep., 40:3-16, J.A. 00083). However, only Plaintiff was terminated for the October 12, 2021 incident. (Plaintiff Dep., 107:2-14, J.A. 00031). Whereas Mr. Faison was "written up." (Faison Dep., 46:5-10, JA 00085).

17

As the aforementioned analysis illustrate, when viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find that Defendant's stated reason for terminating Plaintiff approximately two months after she complained of Mr. Faison's discriminatory behavior was pretextual. Accordingly, Defendant is not entitled to summary judgment on Count II.

### D. Surreply

As held above in Section III.B, the Court declined to consider Defendant's argument as it relates to the meaning of "culera." Thus, Plaintiff's request to file a surreply is moot.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, (ECF Nos. 40, 40-1), is **DENIED**, and Plaintiff's Motion for Leave to file a Surreply, (ECF Nos. 47, 47-1), is **DENIED as moot**.

A separate Order will follow.

Dated:  September 5, 2024

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge